MAFFETT *v.* THOMPSON.

[52 Pac. 565 ; 53 Pac. 854.]

COUNTERCLAIM — EFFECT OF DISMISSING COMPLAINT.— The dismissal of a complaint in an equitable suit after an answer has been filed containing a counterclaim on which affirmative relief is asked, does not operate as a nonsuit, but leaves the case to proceed upon the counterclaim.

CONSTRUCTION OF CONTEMPORANEOUS CONTRACTS.*— Contracts made at the same time, between the same parties, and concerning the same subject matter, should be construed together.

IDEM.— The two contracts concerning the flume of the Latourelle Falls Wagon Road Company, made on October 5, 1889, between said company and Brower & Thompson, are to be considered as one document, and do not constitute a lease of said flume.

SPECIFIC PERFORMANCE.— A lessee who has entered upon leased property, and has partly performed obligations requiring the use of such property, is entitled to have the possession and use until his lease expires as against a purchaser from the lessor.

IDEM.— One seeking the specific performance of a contract must have performed on his part whatever the contract requires.

CONCLUSIVENESS OF DECREE. — A decree in a suit between a purchaser at a mortgage foreclosure sale and one who is in possession under a contract with the mortgagor, but was not a party to the foreclosure, does not affect the rights of the parties to the contract, as between themselves, where the purchaser has not succeeded to the mortgagor's interest in the contract.

From Multnomah: HENRY E. MCGINN, Judge.

Suit by Anna M. Maffett against E. H. Thompson. The cause was tried before M. L. Pipes, Esq., as

*NOTE.— This court has previously announced the same rule in the following cases: *Dean* v. *Lawham*, 7 Or. 422 ; *Kruse* v. *Prindle*, 8 Or. 158 ; *Blagen* v. *Thompson*, 23 Or. 239 (18 L. R. A. 315); *Bradfieldt* v. *Cooke*, 27 Or. 194 (50 Am. St. Rep. 701).— REPORTER.

referee, who filed a report dismissing both the complaint and the counterclaim of defendant. The referee's report was affirmed, and defendant appeals.

MODIFIED.

For appellant there was a brief over the names of *George, Gregory & Duniway*, with an oral argument by *Mr. Ralph R. Duniway*.

For respondent there was a brief over the names of *Geo. W. P. Joseph* and *Arthur C. Emmons*, with an oral argument by *Mr. Edward B. Watson*.

MR. JUSTICE WOLVERTON delivered the opinion.

This suit was instituted for the purpose of enjoining and restraining the defendant from trespassing upon and interfering with plaintiff's use of certain premises and property, consisting of a flume and right of way over certain lands upon which the same is constructed. Plaintiff obtained a temporary restraining order, but, upon the filing of the answer containing an alleged counterclaim and prayer for an injunction, the order was rescinded, and plaintiff was temporarily enjoined instead. In his separate defense, by way of counterclaim, the defendant alleges, in substance: That the Latourelle Falls Wagon Road & Lumber Company was on October 5, 1889, the owner and in possession of a certain flume extending from Brower to Latourelle Falls, in Multnomah County, Oregon, being the same property mentioned in plaintiff's complaint, and, being such owner, leased the same by contract of that date to Brower & Thompson,

for a term ending September 16, 1897, at a rental of fifty cents per 1,000 feet of lumber, board measure, transported by them through and over said flume; that at the same time said company entered into another contract, whereby it agreed with Brower & Thompson that, covering the time above named, the company would take all lumber manufactured by them at their mill at Brower, Oregon, and transport it through and over said flume, and deliver it again to Brower & Thompson, at Latourelle Falls, for which services they agree to pay the company as therein stated; that it was provided in said contract of lease that if said Latourelle Company should fail, neglect, or refuse to maintain and operate said flume, or to keep the same in repair and running order, then that the said Brower & Thompson, or their successors or assigns, might take possession thereof, and maintain and operate the same for the purpose of fluming such lumber as they should manufacture at their said mill, in which event the expenses for rebuilding and repairs the said Brower & Thompson were authorized to deduct from the rents therein provided for; that the defendant is the successor in interest of said lease of the said Brower & Thompson; that in June, 1894, defendant had a large amount of lumber which the company refused to transport; and that thereupon he took possession of said flume, and has ever since retained and now holds such possession, and has at all times complied with the terms of the contract upon his part.

It is then alleged that plaintiff became the owner of the flume property through purchase of a sheriff's

certificate of sale, acquired under foreclosure proceedings, to which proceedings the defendant was in no wise a party, and, therefore, that his rights under the lease were not foreclosed or terminated, and that plaintiff holds said property subject to such lease contract; that about August 1, 1895, defendant received an order for the manufacture and delivery in Indianapolis, Indiana, of 500,000 feet of cedar lumber, but that, before taking or accepting such order, the defendant notified O. N. Denny, receiver of the Portland Savings Bank, who was then the holder of the sheriff's certificate; and that the said O. N. Denny agreed with and authorized him to transport such lumber through and over said flume; and that, relying thereon, defendant had gone to great expense in repairing said flume, and putting it in condition for the transportation of such lumber; that before defendant had completed fluming the said 500,000 feet of cedar lumber, the plaintiff, who had subsequently to said agreement with the receiver obtained a transfer of said sheriff's certificate, entered upon said right of way, and cut said flume, and destroyed portions thereof, and is hindering the defendant in his rightful use thereof; and that said flume affords the only means of transportation to the railroad accessible to defendant for lumber manufactured at his said mill. The reply puts in issue all the allegations of the answer except those touching the foreclosure, sale and transfer of sheriff's certificate to plaintiff, and sets up affirmatively that, at the time of the purchase of said sheriff's certificate by plaintiff, the defendant was in possession of said flume under appointment of said receiver to care for the same as

agent of said receiver, and not otherwise; and that he was operating the same under license of such receiver, and that plaintiff took peaceable possession of said flume, and removed several sections thereof.

The cause was referred to Hon. M. L. Pipes, to settle certain questions arising under the pleadings, and to take the testimony, and report his findings of fact and law thereon. At the opening of the trial, the defendant interposed a motion to dismiss the plaintiff's complaint, and for judgment on the pleadings, which motion had combined with it a demurrer to said complaint. Before said motion or demurrer was passed upon by the referee, the plaintiff filed her written consent that the motion to dismiss should be allowed, and the referee found, as a conclusion of law, that the same ought to be sustained. The referee then heard the testimony of defendant in support of his counterclaim, and that of plaintiff in opposition thereto, and finally dismissed both the complaint and the counterclaim. The referee's report was affirmed by the court below, and the defendant appeals.

The motion to dismiss the complaint, in view of plaintiff's written assent thereto, was properly allowed by the referee, but a more serious question arises touching the effect of such dismissal. The plaintiff contends that it carries the whole case out of court, while the defendant insists that the counterclaim contained in his answer stands as a suit against the plaintiff, and that he is entitled to be heard upon it, and to the affirmative relief prayed for. Under the code system prevailing in this state, a counterclaim may be pleaded in equity as well as in law. It must be

such a one, however, that a suit might be maintained
upon it against the plaintiff, and it is sufficient that
it be connected with the subject of the suit: Hill's
Ann. Laws, § 393. In so far as it was designed to
afford affirmative relief, the counterclaim here pro-
vided for takes the place of the. crossbill under the
chancery practice as it formerly prevailed: *Dove* v.
*Hayden,* 5 Or. 500; *Burrage* v. *Bonanza Mining Com-
pany,* 12 Or. 169 (6 Pac. 766); *Dodd* v. *Dodd,* 14 Or.
338 (13 Pac. 509). Under that practice, which still
obtains in many jurisdictions, if the crossbill sets up
matters purely defensive, and prays for no affirmative
relief, a dismissal of the original bill necessarily dis-
poses of the crossbill also. But, where the crossbill
contains averments of facts connected with the sub-
ject matter of the suit sufficient upon which to base a
prayer for affirmative relief, a dismissal of the origi-
nal bill in the case thus made does not dispose of the
crossbill, but it remains for disposition as though it
had been filed as an original bill in the suit: *Lowen-
stein* v. *Glidewell,* 5 Dill. 325 (15 Fed. Cas. 1027);
*Wetmore* v. *Fiske,* 15 R. I. 354 (5 Atl. 375, and 10 Atl.
627, 629); *Markell* v. *Kasson,* 31 Fed. 104; *Dewees* v.
*Dewees,* 55 Miss. 315. The same principle has been
held to obtain under the code practice of some of the
states: *Worrell* v. *Wade's Heirs,* 17 Iowa, 96; *Russell*
v. *Lamb,* 82 Iowa, 558 (48 N. W. 939); *Jones* v.
*Thacker,* 61 Ga. 329; *Mott* v. *Mott,* 82 Cal. 413 (22 Pac.
1140; *Warner* v. *Darrow,* 91 Cal. 309 (27 Pac. 737).
By analogy, a dismissal of the complaint under our
practice would not carry with it an equitable counter-
claim, containing averments of matters upon which

defendant would be entitled, under his prayer, to affirmative relief. Plaintiff has presented the case upon the assumption that the motion to dismiss the complaint is in effect a motion by defendant for nonsuit, with the written assent of plaintiff. Such was not its purpose. It was designed as an objection to the sufficiency of the complaint, and it was insisted that, because of its insufficiency to state facts to give the court jurisdiction or to constitute a cause of suit, it ought to be dismissed, not that a nonsuit should be granted. This purpose is manifest upon the face of the motion itself, and its effect was not to send the entire cause out of court, but to dispose of the complaint so that plaintiff could not be heard further upon her alleged cause of suit, while it left the defendant free to establish his cause under the averments of his counterclaim if sufficient to entitle him to affirmative relief against the plaintiff.

The sufficiency of the statement of facts constituting the counterclaim was not questioned by the plaintiff, and trial was had under the issues tendered by the reply thereto; and this brings us to a consideration of the cause upon the evidence adduced by the parties, and, as preliminary thereto, it becomes necessary to determine the nature of the agreement under which the defendant claims to have entered, and by virtue of which he claims to hold possession of the flume. He insists that it is a lease; that he is rightfully in possession as a tenant, and that plaintiff is the owner of the reversion only without right of entry. The two contracts referred to in the answer were offered in evidence. Both were made upon the

same day, October 5, 1889, were to take effect at the same time, and upon the same conditions, and to continue in force for the same period.  By one the flume company agrees to take for transportation and delivery from the mill and mills of said lumber company, and to transport on and over said flume all lumber made or manufactured at said mill and mills, together with all lath bolts, cordwood, and split fence posts made or cut by said lumber company, and deliver the same to said lumber company at the lower end of the flume; that said flume shall be used exclusively to transport such lumber, cordwood, and fence posts as long as or while there are any to be transported; provided, however, that, at any time when there is none of such stuff to be transported or delivered, said flume company may use said flume to transport other cordwood, but in no case to transport any lumber except such as is manufactured at said mill and mills of the lumber company.  The lumber company, upon its part, agrees to pay the flume company for such services in the transportation of said lumber $1 for each 1,000 feet, board measure, on the tenth day of the month following, the same "to be full payment and compensation for said transportation. * * * But the same shall be in addition to the sum of fifty cents per 1,000 feet, board measure, for rent of said flume, as provided for in said contract No. three."

The other contract, which is the No. 3 here alluded to, purports upon its face to be a lease of the flume to the lumber company (Brower & Thompson).  By the terms thereof, the flume company covenants and agrees

that, during the continuance of the lease, it will, at its own cost and expense, keep and maintain said flume in good running order and condition, but, in case that it should fail to so keep and maintain said flume in good running order, then that the lumber company may take possession thereof, and repair or rebuild the same in whole or in part; and it is agreed that the costs and expenses thereof shall be borne by the flume company, and that said lumber company may deduct the same from the rents as therein provided; that said lumber company will pay, as rent for said flume, the sum of fifty cents per 1,000 feet, board measure, of lumber transported over said flume, and fifty cents per cord for wood, etc., to be paid on the tenth day of each month after transportation. It is further agreed that said company may enter into contract with said flume company for transporting its lumber, cordwood, etc., over said flume, and that said lease shall be exclusive to said lumber company for the full term, but that at any time when said flume is not being used for floating or transporting the lumber, cordwood, etc., of said lumber company, that said flume company may float and transport over said flume other cordwood, but that in no case shall said flume company transport any lumber except such as is manufactured by the mill and mills of the lumber company.

Although the agreements of the parties are contained in two contracts, they were intended for the accomplishment of the same purpose. That purpose was to require the flume company to transport all the output of the lumber company's mills through and

over said flume to the railroad, and none other, and,
upon the other hand, to require the lumber company
to furnish lumber for transportation exclusively to the
flume company.   The consideration for the transpor-
tation consists of $1 per 1,000 for handling said lum-
ber, and fifty cents per 1,000 for the use of the flume.
The flume company retains exclusive possession and
control of the flume, and this for the especial purpose
of enabling it to perform its express stipulations in
transporting the output of the mills.   The lumber
company was not put into possession, nor was it ever
to enter except upon a breach of certain stipulations
on the part of the flume company to keep the flume in
condition for the transportation of the lumber com-
pany's products.   The use of appropriate words does
not in itself constitute the writing or agreement a
lease: 1 Woodfall's Landlord and Tenant, *124.   Such
an instrument must be interpreted as the parties have
made it, and its purpose ascertained from its terms
and conditions: *New Jersey Midland Railway Com-
pany* v. *Van Sykle*, 37 N. J. Law, 496, 506.   "A lease
is a contract for the possession of land by the lessee
and a recompense of rent or increase to the lessor,
and is the grant of an estate in land": *Christensen* v.
*Pacific Borax Company*, 26 Or. 302, 304 (38 Pac. 127).
Now, there is lacking in the alleged contract of leasing
the very essential ingredient of possession in the
lessee.   None was given under the contract, and none
was intended except upon a breach suffered or com-
mitted by the supposed lessor.   The two contracts
should be construed as one, and its effect is an exclu-
sive engagement by the flume company to transport

lumber and the other commodities named except cord-wood for the lumber company, and, upon the other hand, an exclusive employment of the flume company by the lumber company to transport such commodities for a fixed compensation from Brower to Latourelle Falls by means of said flume.

Some time in April, 1895, O. N. Denny, as receiver of the Portland Savings Bank, while holding the sheriff's certificate of sale of the flume property, authorized the defendant in writing to enter into possession and to preserve the same from trespass and injury. The defendant accepted the trust, and entered by virtue of such authorization. While so in possession he applied to the receiver for permission to transport over said flume 500,000 feet of cedar lumber for which he had an order from Indianapolis, Indiana, and it was agreed between them that in consideration of the defendant's payment of the schedule of rates as fixed by the contract he should have the privilege of so transporting such lumber. The order was accepted and the lumber manufactured in reliance upon such understanding with the receiver. When, however, about 100,000 feet had been transported the receiver sold and transferred the sheriff's certificate of sale to the plaintiff and directed the defendant to turn over the property to her. This he refused to do, and plaintiff thereupon sought to deter and restrain him from further use thereof. It appears conclusively that the defendant was largely indebted to the flume company for the transportation of lumber through and over said flume, and for this reason the flume company had refused longer to operate said flume or to permit

the defendant's use thereof for transportation purposes until such arrearages were paid. Under this state of the facts we think the defendant ought to be permitted to flume the balance of the cedar lumber embraced in said order over said flume under the arrangement agreed upon with the receiver, but that he is not entitled to possession of the flume property further than this, as his holding was in subordination to the rights of the receiver now vested in plaintiff.

Assuming, however, that the parties to this suit stand in the same relations to each other as did the flume company and Brower & Thompson originally under the contracts, the defendant is not entitled to the permanent relief prayed for because of his arrearages in payment for transportation of lumber, etc., over said flume by the flume company. If he would have the contract enforced in the particular which he demands, he must do the things which are required of him by the terms of the contract. This seems to us to be equitable, especially in view of the fact that the lumber company is insolvent, and the defendant stands in the capacity of its assignee for the benefit of creditors. The decree will therefore be that plaintiff be enjoined from interfering with the defendant in fluming the said balance of 500,000 feet of cedar lumber, but that the further relief prayed for be denied.

MODIFIED.

Decided June 20, 1898.

ON REHEARING.

[53 Pac. 854.]

MR. CHIEF JUSTICE WOLVERTON delivered the opin·
ion of the court.

This is a motion to amend certain findings by this
court, and the special purpose thereof is to have it
shown that the issue made by the reply touching the
existing validity.of the fluming contracts entered into
between the Latourelle Falls Wagon Road & Lumber
Company and Brower & Thompson was not passed
upon by the court, and therefore has not become *res
adjudicata* as·to any further proceedings between the
parties to said contracts or their assigns for the en-
forcement of any rights thereby acquired.   It will be
seen by reference to the opinion in the main case that
the plaintiff acquired title to the flume through certain
foreclosure proceedings, and one contention was that
since neither the defendant or his predecessors in in-
terest under the contracts were made parties to the
foreclosure his rights were not foreclosed, assuming
that the contracts constituted a lease, and that thereby
he acquired an interest in the flume as real property.
But the contracts were construed not to constitute a
lease, and therefore that the foreclosure carried the
title to Maffett unaffected by the contract relations
between the flume company and the lumber company.
We assumed, for the sake of argument, so as to dis-
pose of the case upon premises most favorable to
defendant's contention, that the parties to this suit
stood in the same relation as the original parties tͻ

the contracts, and were in condition to enforce legal rights appertaining thereto, and upon this assumption we endeavored to show that he was not entitled to the permanent relief sought. As a matter of fact, as we understand it, Maffett is not the successor in interest of the flume company to the contracts, and does not base her claim thereon, but upon her purchase of the flume itself and the rights appurtenant thereto. By her·reply, however, she claimed a repudiation of the contracts, which tendered a pertinent issue upon the theory that the contracts constituted a lease and that the flume or real property was incumbered with it, but upon the other theory that it was not a lease it could have no relevancy, as Maffett did not claim to be a successor in interest of the flume company to such an agreement. Whatever rights the flume company may have acquired under the contracts it still retains, and so far as this case is concerned, Maffett has acquired none of them, nor in that view has she asserted any benefits by reason thereof. Now the flume company is not a party to the proceeding in any sense of the word, and its rights are not curtailed or circumscribed in the least by the action of the court in the premises. Nor can the decree here entered in any way affect rights or obligations existing between the flume company and the defendant growing out of the conditions of the contracts. This disposes of the matter presented. The question whether the contracts had been repudiated and rendered nugatory or not has been urged for final settlement in this case with commendable energy and zeal, and it is sought by this motion to have the court revise its former decision in

that respect, but the latter proposition cannot be entertained because the case has passed beyond the motion for a rehearing, and the former was put out of the case when it was determined that the contract was not a lease, as it was claimed, and the flume company not being a party to the suit.

MOTION OVERRULED.