Argued March 12, decided April 14, rehearing denied July 28, 1908.

## MERRILL v. HEXTER.

[94 Pac. 972; 96 Pac. 865.]

PLEADING—COUNTERCLAIM.

1. Section 391, B. & C. Comp., provides that cross-bills are abolished except in actions at law, where the defendant is entitled to relief arising out of facts requiring the interposition of a court of equity. Section 402 provides that the counterclaim of defendant shall be one upon which a suit might be entertained by the defendant against the plaintiff in the suit; and, in addition to the cases specified in the subdivision of Section 74 (relating to counterclaims), it is sufficient if it be connected with the subject of the suit. Defendants took a lease of certain real estate, with an agreement to purchase during the term of the lease, and agreed to keep the premises clean, and make certain improvements. Plaintiff sued to cancel the lease and annul the contract for sale, on the ground of noncompliance with contract. Defendants admitted the contract, but denied a breach of covenants, etc., and, for further answer, and by way of what they termed a "cross-complaint," set forth the facts relating to the dealings of the parties and alleged compliance with the contract; that plaintiff refused to accept the agreed purchase price which they had offered to pay; that they were ready, able, and willing to buy, and asked specific performance. *Held,* that defendants' admission of the contract was sufficient to give jurisdiction of the defense, and that the part of defendants' answer termed a "cross-complaint" did not mislead the adverse party, and was good as a counterclaim.

VENDOR AND PURCHASER—NECESSITY FOR TENDER—NOTIFICATION OF REFUSAL TO ACCEPT PURCHASE PRICE—EFFECT.

2. Where a vendor notifies a purchaser that she will not accept the agreed consideration for the property, nor execute a deed therefor, no actual tender in money of consideration is necessary.

CANCELLATION OF INSTRUMENTS—LEASE—CONSIDERATION—EVIDENCE—SUFFICIENCY.

3. Evidence *held* to show that certain rents and possession of a part of the premises in question, and not an agreement to make certain changes thereon, was the consideration for the execution of a lease of the premises containing an agreement to sell.

SAME—COVENANTS FOR IMPROVEMENTS—REASONABLE TIME—EVIDENCE—SUFFICIENCY.

4. Defendants took a lease of certain premises for a term, with an agreement to purchase during the term of the lease, and agreed to make certain improvements. The improvements were not made, but before eight months expired defendants offered to pay the agreed purchase price. *Held*, that the delay was not so unreasonable as to warrant a forfeiture of defendants' rights under the contract.

CANCELLATION OF INSTRUMENTS—EVIDENCE—SUFFICIENCY.

5. In an action to cancel a lease, containing an agreement to sell, for alleged violation of the terms as to keeping the premises cleanly and making certain improvements, evidence *held* insufficient to warrant the relief demanded.

SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY.

6. Evidence *held* to sustain a decree for specific performance of a contract to sell real estate.

APPEAL AND ERROR—REVIEW—ADDITIONAL PROOF.

7. If evidence was important to the issues, it should have been offered at the trial, and cannot be offered in the Supreme Court on appeal by *ex parte* affidavit.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Sarah A. Merrill against Louis Hexter and Lehman Strause, partners as Hexter & Strause, to cancel a lease of real property, and to annul a contract for the sale thereof. The plaintiff, in June, 1905, was the owner in fee of lot 1 in block 4 in Park addition to the city of Portland, Oregon, at which time she executed to the defendants a written option wherein she granted to them, for a term of 60 days, the right to purchase the real property for $50,000, one half of which was to be paid in cash, and the remainder in five years, with interest at 4 per cent per annum, to be secured by mortgage. At that time a storeroom and a basement in a building

on the lot had been leased at $125 per month to one
Fred Langman, who was operating therein a meat
market, the remainder of whose term was about eight
months. Langman sold his interest in the butcher busi-
ness to the defendants, who took possession of the store,
and on July 13, 1905, they entered into a contract with
the plaintiff whereby she demised to them for a term
of five years the storeroom and basement for the sum
of $100 per month, payable in advance; they covenanting
to make no unlawful or improper use of the part of the
building leased to them and that at all times they would
keep the premises properly drained and in a healthful
condition, and would not make any additions to, or altera-
tions in, the property, except in the basement, which,
at their own expense, they stipulated to enlarge and finish
with brick or cement walls and a concrete floor. It was
agreed that the defendants at any time during the term
of the lease, might, and at the expiration thereof, would,
purchase the lot specified, and pay therefor the sum of
$50,000 in gold coin of the United States.

The contract contains the following material stipula-
tions: "Provided always, and these presents are upon this
condition, that, * * if the lessees * * do or shall neglect
or fail to perform and observe any or either of the
covenants hereinbefore contained, which on their part
are to be kept or performed, then and in either of said
cases the lessor * * may immediately and without further
notice * * or demand enter into and upon the said leased
premises or any part thereof, in the name of the whole,
and repossess the same as of her former estate, * *
* * expell the lessees, * * and annul said option to pur-
chase. * * "

Upon securing such lease the defendants established
a meat market in the storeroom and basement, and
promptly paid the stipulated rent; but on July 25, 1906,
this suit was commenced, the complaint setting forth the
facts hereinbefore stated, and alleging that the defend-

ants had failed, and upon a demand therefor refused, to keep or perform their covenants, to make the improvements mentioned, or to keep the premises clean.

The answer admits the facts stated, denies a breach of any of the covenants of the lease, and alleges that, the defendants have fully complied with all the terms of their agreement, except the actual giving of the consideration for the lot, and that about April 1, 1906, they were, and ever since have been, and now are, ready, able, and willing to pay the sum specified, and at the time stated tendered to the plaintiff $50,000 for the real property, but that she refused to accept the offer, or to execute to them a deed of the premises. The defendants, further answering, and for a cross-complaint, set forth the facts relating to their dealings with the plaintiff in respect to the property, and allege that they have fully complied with all the terms of the contract; that, when they tendered to the plaintiff the full consideration, she declined to receive it, and notified them that she would not accept the offer or comply with the terms of her agreement; and that they have been, and were, ready, able, and willing to purchase the real property and to pay therefor the stipulated sum of money, and would abide any order or direction the court might make in reference thereto. The prayer of the answer is that the plaintiff be required specifically to perform her covenant to convey the premises and to execute to the defendants a good and sufficient conveyance of the lot upon the payment of $50,000, as the consideration therefor.

The reply denies the allegations of new matter in the answer, and prays, in addition to the relief sought in the complaint, that the cross-bill might be dismissed for want of equity. Based on these issues a trial was had, and it was decreed that the plaintiff was not entitled to any relief, but that her contract to convey the premises should be specifically enforced, and that, upon the payment to

her of $50,000 by the defendants, she should execute to them a good and sufficient deed, conveying to them a marketable title to the lot, particularly describing it, free of all incumbrances, and she appeals.     AFFIRMED.

For appellant there was a brief over the names of *Mr. M. B. Keefer, Watson & Beekman* and *Chamberlain, Thomas & Hailey,* with oral arguments by *Mr. Edward B. Watson* and *Mr. George E. Chamberlain.*

For respondent there was a brief over the names of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended by plaintiff's counsel that cross-bills have been abolished by statute; that the affirmative relief which the defendants sought against the plaintiff is not germane to the original bill; and that the facts thus alleged in the answer are not pleaded as a counterclaim in equity, for which reasons the trial court erred in entertaining the cross-bill and in granting relief based thereon. Cross-bills have been abolished, except in an action at law, where the defendant is entitled to relief arising out of facts requiring the interposition of a court of equity and material for his defense, when he may, upon filing his answer therein, also as plaintiff file a complaint in equity in the nature of a cross-bill, which shall stay the proceedings at law; and the case thereafter shall proceed as a suit in equity. Section 391, B. & C. Comp. Our statute regulating the practice in suits in equity contains the following provision: "The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit; and in addition to the cases specified in the subdivisions of Section 74, it is sufficient if it be connected with the subject of the suit." Section 402, B. & C. Comp. In construing the section last mentioned it was held in *Dodd* v. *Dodd,*

14 Or. 338 (13 Pac. 509), that, in a suit for a divorce, the defendant might, in an answer in the way of a counterclaim, demand and obtain affirmative relief, when it appears that such party is entitled to a decree. This decision removed the doubt which the statute abolishing cross-bills had created, as to the right of a defendant in a suit in equity to invoke affirmative relief. In *Maffett* v. *Thompson,* 32 Or. 546 (52 Pac. 565: 53 Pac. 854), Mr. Justice WOLVERTON, referring to what is now codified as Section 402, B. & C. Comp., says: "In so far as it was designed to afford affirmative relief, the counterclaim here provided for, takes the place of the cross-bill under the chancery practice as it formerly prevailed. In *Dove* v. *Hayden,* 5 Or. 500, it was ruled that a counterclaim in equity could not be interposed by a defendant, unless his answer to the complaint admitted the plaintiff's claim stated therein, or some part thereof. In that case, however, it is stated that the cause of suit did not arise out of a contract, nor was the defense connected with the subject of the suit. The rule thus announced was followed in *Le Clare* v. *Thibault,* 41 Or. 601 (69 Pac. 552), in which it was determined that the matters set forth in the second separate defense, did not arise out of the contract set forth in the complaint as the foundation of the plaintiff's claim, except in one particular, and in that instance it was not connected with the subject-matter of the suit. In the case at bar the separate defense interposed arises out of the contract entered into by the parties, and is intimately connected with the cause of suit stated in the complaint. The defendants' admission in the answer of their execution of the contract was a sufficient acknowledgment of the plaintiff's claim, as set forth in the complaint, to give the court jurisdiction of the defense, and though that part of the answer under consideration is denominated a cross-complaint, as classed under the ancient chancery practice, neither the court nor the adverse party was misled thereby, and hence no error was committed as alleged.

2. It is insisted by plaintiff's counsel that the testimony conclusively shows, that the defendants never tendered any part of the $50,000 as a condition precedent to the execution of a deed to the premises, and, this being so, no foundation exists for the specific performance of the terms of the contract, in decreeing which an error was committed. It will be remembered that it was the plaintiff who initiated this suit, and that the defendants, having been made adverse parties, answered, setting forth the facts constituting their defense and alleged right to equitable relief. They also averred that the plaintiff notified them that she would not accept the offer of the stipulated consideration for the premises, or execute to them a deed therefor. In such case no actual tender in money of the consideration was necessary. *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 400 (86 Pac. 883: 88 Pac. 586); *West* v. *Washington Ry. Co.*, 49 Or. 436 (90 Pac. 666).

3. Considering the case on its merits, the plaintiff, as a witness in her own behalf, testified that she was receiving from Langman, $125 a month for a lease of the storeroom and basement, and could have obtained from other tenants a like sum per month for the use of the premises, but she demised the same to the defendants for a term of five years at only $100 a month, relying upon their covenants to keep the rooms in a sanitary condition, and to make, at their own expense, the improvements specified, which they represented would entail an outlay of about $3,000; that the defendants neglected to keep the premises in a sanitary condition, and in operating their meat market they permitted foul odors to emanate, the inhaling of which made the witness and her tenants ill; and that the defendants refused to make any of the improvements specified, and, when requested by her to do so, replied that the contract did not specify any time within which the betterments should be made. The testimony of other witnesses shows, that

complaint of the unsanitary condition of the meat market was made to the health officer; that he examined the leased premises, and notified the proprietors that changes in the management thereof should be made; and that the defendants always complied therewith. It also appears that one Saturday evening, during warm weather, the scavenger, whose duty it was to remove garbage, neglected to call at the defendants' place of business for the accumulated refuse, and on the next day offensive smells therefrom were discharged. Wm. Beutelspacher, a deputy health officer, as plaintiff's witness, testified that, complaint having been made of the condition of the meat market, he visited it, and notified the defendants of certain changes that should be made in the management of their business, with which directions they complied, and on cross-examination this witness states that the defendants' butcher shop is as cleanly as any in the city. The defendant Strause testified that, when the lease was executed, the plaintiff had no knowledge of the improvements to the premises which he and his partner, the co-defendant Hexter, contemplated, until the latter informed her that some changes were desired, and particularly that a cold storage plant should be installed, whereupon she informed them that they must bear the expense incident thereto, and a stipulation to that effect was made a part of the contract, but no time was specified within which the work should be done; that it was thereafter discovered that the foundation of the basement was so deep that drainage therefrom could not be made into the sewer, and for that reason the inauguration of the refrigerator process was deferred until they could secure a title to the lot agreed to be conveyed to them; that the reduction of $25 a month in the rent reserved did not form any part of the consideration to make the improvements specified; that the defendants were ready, able, and willing, within the 60 days limited therefor, to pay the plaintiff $25,000, and to execute to her a mortgage

of the premises to secure the remainder of the considera-
tion, but she preferred that the entire sum should be paid
at once, and desired to retain possession of all the lot,
except the storeroom and basement, until such payment
was made rather than to accept the mortgage bearing the
low rate of interest; and that at her suggestion, the lease
and contract were so prepared. This witness further
testified that about April 1, 1906, the plaintiff was notified
that the money agreed to be paid for the lot was ready
and she was requested to procure an abstract of the title
to the premises, which she, from time to time, promised
to secure, until July 25th of that year, when this suit
was commenced. The testimony of this witness is cor-
roborated by that of Hexter, who also states that, when
the first bargain to purchase the property was made,
the price agreed to be paid therefor was considered as
being very high, but because of their inability to secure
another desirable location for a meat market, and by
reason of the low rate of interest which they expected to
pay for five years, on one half of the consideration, the
agreement was consummated.

It is argued by plaintiff's counsel that, though the con-
tract does not, in express terms, specify the time within
which the improvements were to have been made, the
rules of law applicable to the interpretation of such
agreements imply that the work should have been done
within a reasonable time, which had fully expired long
prior to the commencement of this suit, and that the
defendants' failure to keep the demised premises in a
healthful condition, constituted such breaches of the
agreement as to justify the plaintiff's action in taking
advantage of the clause of the contract which permitted
her, in case of such default, to revoke the option to pur-
chase the premises, and, having done so, the trial court
erred in refusing to grant the relief prayed for in the
complaint. In a note to Section 1297 of Pomeroy's Equity
Jurisprudence (3 ed.) it is said: "Equity distinguishes

between those terms and stipulations which are of the essence of a contract, and those which are not, and does not permit the defendant to set up a breach of the latter as complete bar to all relief, or a sufficient reason for wholly refusing to execute the agreement. In these cases no action at law can be maintained; but equity, if the contract is otherwise a proper one, will compel a performance, with such compensations or allowances as may be just to the parties."

The reduction of $25 a month which the plaintiff made to the defendants on account of the rent when she leased the storeroom and basement to them did not, in our opinion, form the consideration for the stipulation to make the specified improvements. The defendants severally testified that they were prepared to pay the plaintiff the sum of $25,000 within the 60 days first limited therefor, and would have done so, but, at her request, they accepted a lease of the premises for the term of five years. It appears that several buildings have been erected on the lot, the rent from which was to be paid to the plaintiff until the deed was delivered to the defendants. By executing the lease to them the plaintiff surrendered her right to $1,000 a year, the interest on the remainder of the purchase price at 4 per cent per annum, which, with the reduction in the rent, is equivalent to a diminution of $108.33 a month. Whether or not the value of the plaintiff's occupation of her home, and the money which she received from tenants for the use of rooms in her buildings, were equal to the relinquishments indicated, do not appear from the testimony; but we believe the receipt of such rents and the possession of the building which had for many years been her residence constituted the consideration for executing the lease in question. "Where the length of the lease," says Mr. Justice LEWIS, in *Wilson* v. *Owens,* 1 Ind. T. 163 (38 S. W. 976), "is fixed by the agreement, but the time within which the improvements are to be made is not

stated, it is not perceived why the ordinary rule of law that performance must be had within a reasonable time, should not apply. What would be a reasonable time must depend upon the character of the improvements, and the various circumstances surrounding the parties and the subject-matter of the contract. These considerations may be readily apprehended, and are to be kept in mind in determining what is a reasonable time for the making of the improvements stipulated."

4. The discovery made by the defendants, after the lease was executed, that the floor of the basement, which they stipulated to relay in concrete, was lower than the sewer, in consequence of which it would have been extremely difficult to install a cold storage plant, is a fact to be considered, from which it would appear that a change in the structure of the building was required before the cement work could have profitably been done; and hence the securing of a deed to the premises prior to making the improvements affords evidence of business acumen. In view of this circumstance the defendants' offer, made about April 1, 1906, to pay the entire consideration for the lot, does not, in our opinion, make their delay of less than eight months in complying with the terms of the agreement so unreasonable as to authorize a forfeiture of their rights under the contract.

5. It will be remembered that a complaint having been made of the alleged unsanitary condition of the defendants' meat market, Beutelspacher, a deputy health officer of Portland, visited their place of business, and, as plaintiff's witness, testified on cross-examination that he found it as cleanly conducted as any butcher shop in the city. At one time in the summer, however, the scavenger neglected to call for the garbage on Saturday evening, and on the next day odors arose from the refuse which, Strause testified, was immediately removed.

6. A careful examination of the testimony convinces us that there was not such a violation by the defendants

of their covenants as to authorize a cancellation of the contract, and that, in decreeing a specific performance thereof, no error was committed.

It follows that the decree is affirmed.

AFFIRMED.

Decided July 28, 1908.

## ON PETITION FOR REHEARING.

[96 Pac. 865.]

MR. CHIEF JUSTICE BEAN delivered the opinion.

7. The several points made in the petition for rehearing were carefully considered before the case was decided, and a re-examination of the record only confirms us in the views heretofore expressed. The location of the sewer, relative to the basement of the building, is not of any very great importance; but, if so, the proof in reference thereto should have been offered on the trial in the court below, and cannot be made in this court by *ex parte* affidavit.

Petition denied.          AFFIRMED: REHEARING DENIED.